## A. P. W. PAPER CO., Inc., v. FEDERAL TRADE COMMISSION.

### No. 169.

Circuit Court of Appeals, Second Circuit.

May 17, 1945.

Sullivan & Cromwell, of New York City (Edward H. Green and E. H. Sykes, both of New York City, of counsel), for petitioner.

W. T. Kelley, Chief Counsel, Joseph J. Smith, Jr., Asst. Chief Counsel, and Donovan R. Divet, Sp. Atty., all of Washington, D. C., for respondent.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

By a proceeding initiated in 1942 the Commission charged the petitioner with a violation of section 5(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 45 (a), in using the words "Red Cross" and the Greek red cross emblem to designate certain of its products. The petitioner is a New York corporation engaged in the business of selling toilet tissues and paper towels in interstate commerce. Among its products are certain brands designated by it as "Red Cross Toilet Tissue" and "Red Cross Towels". On the wrappers of each package or roll, as well as in the petitioner's advertisements for these brands, the words "Red Cross" and the Greek red cross emblem are prominently displayed. Toilet tissues have been marketed by the petitioner under such trade name and emblem since 1897 and paper towels since 1933. In 1911 the trade-mark was registered in the Patent Office, and the registration was extended to cover paper towels on an application filed in October 1933. The wrappers of each package or roll and the petitioner's advertisements contain additional words showing that the goods are the petitioner's product but these words catch the eye less readily than do the trade name and emblem.

The Commission found that the name "Red Cross" and the emblem of the Greek red cross on a white ground have long been associated in the minds of the public with the American National Red Cross and that the petitioner's use of the words "Red Cross" and the emblem has the capacity and tendency to mislead and deceive a substantial portion of the purchasing public into the mistaken belief that the petitioner's goods are sponsored or approved by, or in some manner connected with, the American Red Cross organization. The Commission further found that the additional words on the wrappers showing manufacture by the petitioner and registration of the trade name and mark are insufficient to correct the erroneous impression created through use of the name and emblem. Accordingly the Commission entered the order which the petitioner now challenges.

 If success of the attack upon the order turned on maintaining the contention that the Commission's findings are not supported by substantial evidence, the petitioner would fail. Whether the petitioner's use of the words and emblem has the tendency and capacity to mislead the public

presents a question of fact as to which the Commission's judgment, if not arbitrary, should be accepted. See Brougham v. Blanton Mfg. Co., 249 U.S. 495, 499, 39 S.Ct. 363, 63 L.Ed. 725; Leach v. Carlile, 258 U.S. 138, 140, 42 S.Ct. 227, 66 L.Ed. 511; Herzfeld v. Federal Trade Commission, 2 Cir., 140 F.2d 207, 209; Zenith Radio Corporation v. Federal Trade Commission, 7 Cir., 143 F.2d 29, 31. In the case at bar the Commission's inference is supported by the testimony of witnesses that the Red Cross words and emblem indicated to them that the goods were in some way approved by or associated with the American Red Cross. That more careful observers were not so misled is, of course, immaterial, for the statute is intended to protect the unthinking and credulous members of the public as well as the more sophisticated and intelligent. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141; Charles of the Ritz Dist. Corporation v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 679.

Decision must turn on the validity of the petitioner's contention that its use of the trademark is expressly permitted by the Act of January 5, 1905, 33 Stat. 599, as amended in 1910, 36 Stat. 604, 36 U.S. C.A. § 1 et seq. Section 1 of the Act created a corporation by the name of "The American National Red Cross"; section 2 defined its powers—among others, the right to use "as an emblem and badge, a Greek red cross on a white ground"; section 3 designated the purposes of the corporation; and section 4, 33 Stat. 600, declared it unlawful for any other corporation, "not now lawfully entitled to use the sign of the Red Cross, hereafter to use such sign * * * for the purposes of trade * * *", and made the violation of "the provision of this section" a misdemeanor punishable by fine or imprisonment or both, any fine so collected to be paid to the American National Red Cross. In 1910 section 4 was amended, 36 U.S.C. A. § 4. After declaring the prohibition against use of the red cross emblem or the words "Red Cross," a proviso was inserted in these words:

"Provided, however, That no person, corporation or association that actually used or whose assignor actually used the said emblem, sign, insignia, or words for any lawful purpose prior to January fifth, nineteen hundred and five, shall be deemed for-

bidden by this Act to continue the use thereof for the same purpose and for the same class of goods."

■ We think it clear that the exception in the original section 4 of persons "now lawfully entitled to use such sign" and the even more specific language of the proviso in the 1910 amendment indicate the intention of Congress to permit the continued use of the Red Cross words and symbol to those who were lawfully using them prior to January 5, 1905. Further support for this view may be found in the committee report* on the 1910 amendment in the statement that "the section a:. amended gives the American Red Cross the fullest protection it is possible to afford by Congressional enactment, and at the same time amply protects the concerns possessing vested property rights in the emblem." Subsequent Congressional action is also significant. In 1919 a bill was introduced (H. R. 14330, 65th Cong., 3rd Sess., reprinted in Hearings before the Committee on Foreign Affairs on H.R. 6911, 77th Cong., 2d Sess., p. 371) to amend section 4 by striking out the proviso and making the prohibition general, but it failed of passage. In 1942 another bill (S. 469, 77th Cong., 2d Sess.) was introduced authorizing pre-1905 users "to continue to use the Red Cross" until July 1, 1947 with a tapering off period until July 1, 1953. This bill was passed by the Senate and sent to the House. The House Committee reported the bill to the House with minor amendments, and its report recognizes "that under existing law there are legal uses of the symbol by commercial users." (Report No. 2054, 78th Cong., 2d Sess., p. 4). However, Congress adjourned before the bill was reached on the calendar. We think that this legislative history, as well as the statutory language, supports the petitioner's contention that its right to continue the use of the Red Cross words and symbol has received congressional recognition.

■ The Commission advances two arguments in opposition. It says first that since the Red Cross name and symbol have long been familiar to the American public it may fairly be inferred that the petitioner's commercial use prior to 1905 was just as misleading as it is now; hence its pre-1905 use was not for a "lawful purpose" and the petitioner does not come within the proviso to section 4. This proves too much. It would be equally true, as counsel conceded upon oral argument, of any of the many pre-1905 commercial users of the Red Cross words and symbol; hence the 1910 proviso would be meaningless. Secondly, the Commission argues that section 4 does not confer upon pre-1905 users a right to continue to use the Red Cross words and emblem, but merely exempts them from criminal liability for continuing such use; and, if construed broadly enough to permit a use which misleads the public, it was, to this extent, impliedly repealed by the 1938 amendments to the Federal Trade Commission Act which extended the prohibition of section 5 so as to include not only unfair methods of competition in commerce but also "unfair or deceptive acts or practices in commerce." 52 Stat. 111; 15 U.S.C.A. § 45. That repeals by implication are not favored and that two statutes dealing with related subject matter should, if possible, be so construed as to give effect to both are principles of statutory construction too elementary to require the citation of authorities. Both principles may be recognized in the case at bar by holding that the Red Cross Act gives the petitioner the right to continue to use the Red Cross words and symbol but the Federal Trade Commission Act empowers the respondent to prevent their use in a deceptive manner. In other words, the Commission may not absolutely forbid the use of the words and symbol to pre-1905 lawful users but may require them to state, so plainly as to avoid the creation of misleading inferences by such use, that the goods are not sponsored, approved or in any manner connected with the American National Red Cross. The present order goes beyond permissible limits in forbidding any use of the words and mark. Accordingly the order must be reversed and the cause remanded to the Commission for the entry of an order which will not infringe the rights of the petitioner under the Red Cross Act as above construed. We do not ourselves attempt to formulate the new order because our recent decisions have held that the measure of the necessary relief is peculiarly within the competence of the Commission, Herzfeld v. Federal Trade Commission, 2 Cir., 140 F.2d 207, 209; Parke, Austin & Lipscomb v. Federal Trade Commission, 2

---

* Report No. 1256, 61st Cong., 2d Sess., reprinted in Hearings before the Committee on Foreign Affairs on H.R.6911, 77th Cong., 2d Sess., p. 345, at 347.

428

Cir., 142 F.2d 437, 442, certiorari denied, 65 S.Ct. 86; Charles of the Ritz Dist. Corporation v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 680.

Order reversed and cause remanded for further proceedings in conformity with this opinion.

CLARK, Circuit Judge (dissenting).

The net effect of our decision is that the remedial measures which the Commission may order to stop the deception of the public here found are limited to additional explanatory matter concerning petitioner's use of the well-known Red Cross emblem, and cannot reach that use itself. Had the Commission found such remedy adequate and ordered it, I should have viewed the result with equanimity as a presumptively fair adjustment of public and private rights. But having in mind our quite limited control over the Commission's decisions as to the appropriate remedies to be ordered against deceptive practices, I think we are bound to recognize the obvious fact that it is the Greek Red Cross which to the public symbolizes the Society itself; and mere explanatory material, however carefully framed, will be no more effective in the future than it has been in the past. In the nature of things, our decision must be one not of discretion, but of law; and as such it suggests potentially grave limitations, by the process of implied exception, upon the far-reaching Federal Trade Commission Act of 1938, 15 U.S.C.A. § 41 et seq.

As is well known, it had long been considered a defect of the original Federal Trade Commission Act that it reached only unfair competition or unfair competitive trade practices, and not, more directly, deception of the consuming public. Hence the 1938 amendments which also made unlawful "unfair or deceptive acts or practices in commerce," 15 U.S.C.A. § 45(a), were an important enlargement of the Commission's jurisdiction. Cf. Fresh Grown Preserve Corporation v. Federal Trade Commission, 2 Cir., 125 F.2d 917, 919. That amendatory Act contains its own exceptions, and thus under well-known rules makes less possible the implication of other exceptions not stated. Bondurant v. Watson, 103 U.S. 281, 288, 26 L.Ed 447; Amy v. City of Watertown, 130 U.S. 320, 323, 324, 9 S.Ct. 537, 32 L.Ed. 953; Brown v. Duchesne, 19 How. 183, 60 U.S. 183, 195, 198, 15 L.Ed. 595. The opinion, I think, inverts the problem when it overlooks this rule to say that there is no repeal by implication of the Red Cross Act of 1910 by the 1938 Act. Since they subserve quite different ends, and do not overlap, there is no question of implied repeal. The 1905 Act and its amendment of 1910 were grants of charter to the American National Red Cross, coupled with penal provisions and a limited exception therefrom to protect its official name; compare the significant direction that fines collected for violation of the statute should be paid to the Society. Certainly this shows no legislative intent to legalize deception of the public, which was not then a matter of federal administrative concern. Of course, the later bills designed to limit and eventually to end the limited exception from prosecution contained in the 1910 Act naturally would have less scope than the original Act, and the legislative discussions and committee reports show nothing else. I think the opinion confuses two separate problems, viz., "legal uses of the symbol" as against the Society and the United States permitted by the special legislation of 1910 with deception of the consuming public prohibited by the broad regulatory Act of 1938. Hence I think we lack power to set aside the remedy here chosen by the Commission.