COLUMBIA RESEARCH CORP. and Allerton Pharmacal Corp., Plaintiffs,

v.

Robert SCHAEFFER, Postmaster of the City of New York, Defendant.

United States District Court
S. D. New York.

June 25, 1957.

---

Alfange & Friedman, New York City, for plaintiffs.

Paul W. Williams, U. S. Atty., New York City, Amos J. Peaslee, Jr., Asst. U. S. Atty., New York City, of counsel, for defendant.

SUGARMAN, District Judge.

Plaintiffs have commenced this action to restrain the Postmaster of the City of New York from enforcing a "Fraud Order" dated February 11, 1957, which was issued after appropriate administrative proceedings.

Plaintiffs now move for a preliminary injunction as prayed for in the complaint.[1] The defendant moves for summary judgment "dismissing the complaint herein on the merits, on the grounds that no genuine issue as to any material fact exists, and that defendant is entitled to judgment as a matter of law * * * ."[2]

The elements of the conduct prohibited by the statutes[3] under which the Postmaster General purportedly acted through his delegates in the instant case are three, viz., (1) a scheme for obtaining money through the mails, (2) by means of false pretenses, and (3) with intent to defraud.[4]

Plaintiffs have put on the market a drug product, "Propex Tablets," which is sold through the mails to overweight persons who respond to advertising materials mailed to them by plaintiffs apparently without prior request of the buyers.

The administrative complaint against the plaintiffs in this action sets forth eight allegations of "false pretenses, representations and promises." For purposes of this decision, these eight allegations are divided into two categories. The first is comprised of allegations the essence of which is that the plaintiffs falsely claim in their advertising that the ingredients of "Propex Tablets" affect the human body in certain ways.

1. F.R.Civ.P. 65, 28 U.S.C.A.

2. F.R.Civ.P. 56.

3. 39 U.S.C.A. §§ 259, 732.

4. United States Nature Products Corp. v. Schaffer, D.C.S.D.N.Y.1954, 125 F.Supp. 374.

**516**

Thus, it is charged:

"[T]he respondents are representing to the public in substance and effect:

"a. That 'Propex Tablets' are: 'The most revolutionary and sensational reducing development ever achieved', 'unique and different than anything known for reducing', and 'more effective than *any other reducing product*';

"b. That for any obese user thereof, the ingredients of 'Propex Tablets' 'acts directly against the fat itself' and 'helps nature dissolve the fat into a liquid waste which your body eliminates quickly';

"c. That by the use of 'Propex Tablets' any obese person will lose as much fat as they want to lose; and specifically will lose 6 pounds of 'ugly fat' within the first 48 hours, 9 pounds the first week, and '30, 40, 50 or even 100 pounds in a reasonable length of time'; and will lose ' * * * *as many pounds and inches the first few days, as you could hope to lose in one week with any other reducing product*';

\* \* \* \* \* \*

"f. That 'Propex Tablets' contain ingredients that will control and satisfy the hunger and regulate the stomach of any obese person;

\* \* \* \* \* \*

"h. That by the use of 'Propex Tablets' any obese person will lose fat 'under the chin, back of neck, abdomen, legs, thighs, arms, etc.', in the areas designated in the diagram accompanying such advertisements, because ingredients of 'Propex Tablets' ' * * * act directly against this fat by removing its excessive water and helping nature dissolve the fat itself'; i. e., that said preparation will enable any person to lose fat in the areas so designated and enumerated, that selective weight-reduction is possible in any such areas through the use of said preparation, and that the elimination of excess water in the body is an effective method for, and is equivalent to, the reduction of fat in corpulent individuals."

The second category is comprised of allegations which substantially charge that the plaintiffs advertised falsely that the use of "Propex Tablets" *without dieting,* i. e., without the necessity of consciously curbing the user's appetite, would enable the user thereof to lose weight. Thus, the complaint further charges that "the respondents are representing to the public in substance and effect:

"d. That by the use of 'Propex Tablets' any obese person will lose whatever amount of fat they desire to lose and 'still eat steaks, chops, roasts, stews', and whatever else they like to eat; i. e., that no selection or elimination of types or kinds of foods is required in order for any obese person to lose fat through the use of said preparation, and that no diet is required to enable any user of 'Propex Tablets' to lose ugly fat;

"e. That in order for any corpulent user thereof 'to remove ugly fat', 'Propex Tablets' require '*less will power*', because the ingredients of said preparation 'stops the continuance (sic) contractions of an empty stomach, creates a feeling of fullness so that hunger pangs, stomach growls and "gastric itch" stop in about 3 seconds' and prevents any user thereof from being hungry 'from *morning till night.* Propex creates a feeling of fullness as though you had a complete hearty meal three times a day. *You feel full* (no hunger) *all day long*';

\* \* \* \* \* \*

"g. That 'Propex Tablets' will automatically curb the appetite or craving for food and will prevent overeating for any obese user thereof;"

In so far as the "Fraud Order" herein is based on findings of "fact" that

the plaintiffs misrepresented the medical effects of "Propex Tablets" on the human body, it is invalid and void. The record of the administrative proceeding adequately demonstrates that it is a question of medical opinion whether the ingredients of the product, separately or as an integrated agent, have the medical effect on the human body claimed by the plaintiffs.[5] It is not the function of post office officials to act as medical arbiters in proceedings of this type.[6]

However, to the extent that the administrative order is based on findings[7] that plaintiffs' scheme employed false representations in the second category above mentioned, it is valid and lawful.

Concededly, "Propex Tablets" will not effect any appreciable reduction of excess weight for a person taking same who continues on the diet which caused his unwanted corpulence. As plaintiffs were advised by their consultant, the Bureau of Therapeutic Research, by letter dated July 6, 1955:

> "in the ultimate analysis weight reduction is a matter of nutritional caloric intake restriction."

The plaintiffs seem to agree that it would be a fraud to make the claims for their product set forth in the second category above, but they contend that only a garbled reading of their advertising could sustain the administrative interpretation thereof. I disagree.

A fair reading of their promotional materials as a whole convinces the court that the plaintiffs in effect told the readers thereof that plaintiffs' product would enable an obese person to achieve a weight loss by the use of "Propex Tablets" alone.

The cases relied on by plaintiffs do not sustain their contentions in the instant action. In Carlay Co. v. Federal Trade Commission,[8] the court found that the plaintiffs' advertising fairly apprised the readers that dieting was required in addition to use of the candy sold by Carlay Co. In United States Nature Products Corp. v. Schaffer, Judge Dawson found that plaintiff's exaggerations were "merely that type of hyperbole that the public is well accustomed to take as such."[9]

The foregoing cases are not persuasive on the question of whether the instant "Fraud Order" should be upheld. Here, the Hearing Examiner found as a fact that the advertising of plaintiffs was designed to or did hold out to the reader thereof a promise of substantial weight loss by the use of their product alone.

Plaintiffs rely heavily on the Court of Appeals opinion in Pinkus v. Reilly,[10] wherein the court sustained the district court's injunction against enforcement of a "Fraud Order." There is a striking resemblance between the claims made for Mr. Pinkus' "Kelp-i-dine" and the claims here made for "Propex."

However, in affirming the decision of the Court of Appeals, the Supreme Court did so "without prejudice to a reopening of the proceedings against respondent to permit additional hearings should the Postmaster General choose to do so."[11] The court upheld the injunction only because the cross-examination of government witnesses was unduly restricted by the fact finding official.

Paraphrasing the Supreme Court's language in Reilly v. Pinkus, the follow-

---

5. If there was error in excluding the testimony of August J. Pacini, as a doctor of medicine or otherwise, it was harmless in the light of this ruling.

6. American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

7. See, e. g., Initial Decision of Hearing Examiner, pp. 7–8.

8. 7 Cir., 1946, 153 F.2d 493.

9. D.C.S.D.N.Y.1954, 125 F.Supp. 374, 378.

10. 3 Cir., 1948, 170 F.2d 786, affirmed 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63.

11. 338 U.S. 269, 277, 70 S.Ct. 110, 115.

**518**

ing quotation is especially pertinent to the instant case:[12]

> "In this case there is conflict, though slight, as to whether [plaintiffs' product] is valueless as a weight reducer. But even if we assume that medical opinion is yet in a state of flux on this question, we think that there was sufficient evidence to support the findings that the efficacy of the 'Reducing Plan' as a whole was misrepresented in respondent's advertising. And we think those misrepresentations went beyond permissible 'puffing' of a seller's wares; they were material representations on which credulous persons, eager to reduce, were entitled to rely. Despite subtle qualifying phrases it is difficult to read these advertisements as a whole without receiving the impression that, contrary to facts justifiably found by the Postmaster General, [Propex] is a sure and drastic weight reducer; that a user can reduce without uncomfortably restricting his usual ample diet of fattening foods; that the treatment is absolutely safe and harmless to people of all ages, * * *. See Donaldson v. Read Magazine, 333 U.S. 178, 188–189, 68 S.Ct. 591, 596–597, 92 L.Ed. 628. These representations, if made with intent to deceive, fall squarely within the type which in Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511, were held to justify findings of fraud."

At the instant administrative hearing, it was established that substantial weight loss would follow the use of "Propex" only if a low calorie diet were adhered to. A reading by the court of the advertising matter used by plaintiffs shows that the administrative finding of the falsity of plaintiff's advertising was correct. The further finding of fraudulent intent will not be disturbed on the record before the court.

Accordingly, the motion for an injunction is denied; the cross motion for a summary judgment is granted and it is so ordered.

Settle an appropriate judgment.