**E. F. DREW & CO., Inc., Petitioner,**

v.

**FEDERAL TRADE COMMISSION,**
**Respondent.**

**No. 210, Docket 23724.**

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1956.

Decided July 13, 1956.

---

Samuel J. Loewenstein, New York City, for petitioner.

Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, John W. Carter, Jr., Alvin L. Berman, Attys. for Federal Trade Commission, Washington, D. C., for respondent.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Petitioner, E. F. Drew & Co., Inc., seeks review of an order of the Federal Trade Commission directing it to cease and desist from using certain phrases in the advertising of its oleomargarine. Although petitioner questions the conclusions arrived at by the Commission, there is no dispute as to the following facts: Petitioner, a Delaware corporation having its principal place of business in New York, sells and distributes oleomargarine under the name "Farm Queen" to dairies and milk dealers in several states. In order to aid these milk dealers in the sale of its margarine to consumers, petitioner distributes in the mails and in interstate commerce a variety of circulars, letters, and other advertisements. These advertisements of petitioner's oleomargarine contained, until discontinued by petitioner, the expressions "churned to delicate, sweet creamy goodness," "country fresh," and "the same day-to-day freshness which characterizes our other dairy products." The complaint alleged that these and expressions of similar import were "misleading in material respects and constitute false advertisements, as such term is defined in Section 15 of the Federal Trade Commission Act." The hearing examiner found that the statements "churned to delicate, sweet creamy goodness" and "the same day-to-day freshness which characterizes our other dairy products" were representations that petitioner's oleomargarine is a dairy product. The Commission modified this finding by adding the expression "country fresh," and affirmed the finding as modified. The Commission adopted the other findings of the examiner, affirmed the initial decision, and issued its order to cease and desist. This court has jurisdiction over the petition for review under 28 U.S.C. § 1331 and 15 U.S.C.A. § 45(c) and (d), and the venue is proper under 15 U.S.C.A. § 45(c).

This case raises questions concerning the construction and constitutionality of § 15(a) (2) of the Federal Trade Commission Act, 15 U.S.C.A. § 55(a) (2), and is the second such case to reach a Court

of Appeals. The first, Reddi-Spred Corporation v. Federal Trade Commission, 3 Cir., 1956, 229 F.2d 557, was decided in favor of the Commission in all respects. However, the questions presented here, though similar to those involved in the Reddi-Spred case, include somewhat different arguments. The questions presented by this case may be stated as follows: (1) In a proceeding for violation of §§ 12 and 15 of the Federal Trade Commission Act, 15 U.S.C.A. §§ 52 and 55, involving oleomargarine advertisements, is it necessary to establish that the acts and practices involved are of a false and misleading character, as is required in a proceeding for violation of § 5 of the Act, 15 U.S.C.A. § 45? (2) If § 15(a) (2) of the Act, 15 U.S.C.A. § 55(a) (2), is construed so as to make such proof unnecessary, is that subsection constitutional? (3) Are the findings of fact, upon which the order to cease and desist is predicated, supported by substantial evidence? These questions will be considered *seriatim*.

## I

Petitioner contends that the Commission must establish that petitioner's advertisements have the tendency or capacity to deceive consumers, *i. e.*, are of a false and misleading character, and hence that they would be likely to induce the purchase of the oleomargarine under the mistaken belief that it was a dairy product. The Commission, conceding that it has made no such finding, believes that such a finding is not required in a proceeding for violation of § 15(a) (2). We therefore turn to an examination of the pertinent statutory language.

■ Section 12(a), 15 U.S.C.A. § 52 (a), makes it "unlawful for any * * * corporation to disseminate, or cause to be disseminated, any false advertisement— (1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food * * *." Section 12(b), 15 U.S.C.A. § 52(b), provides that "The dissemination or the causing to be disseminated of

any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 5." Section 5, 15 U.S.C.A. § 45, authorizes the Commission to institute proceedings and in a proper case to issue a cease-and-desist order. Thus the Commission has the power and the duty to issue a cease-and-desist order whenever it finds, on the basis of substantial evidence: (1) that the advertisement is *disseminated by the mails or in commerce;* (2) that the advertisement is *false;* and (3) that the advertisement is disseminated *"for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food * * *."* In this case the Commission has found, and petitioner concedes, that, the advertisements involved were disseminated by the mails and in commerce, and that such dissemination was for the purpose of inducing, directly or indirectly, the purchase of its "Farm Queen" oleomargarine. It follows that we need only inquire whether the Commission has properly concluded that the expressions used in petitioner's advertising constitute "false advertisements."

■■ Section 15(a) (1), 15 U.S.C.A. § 55(a) (1), defining the term "false advertisement" as used in § 12, 15 U.S.C.A. § 52, provides that any advertisement which is misleading in a material respect is a "false advertisement." We now arrive at the crucial statutory provision, subsection (a) (2) of § 15, 15 U.S.C.A. § 55(a) (2). This subsection, in effect, provides a special definition of "false advertisement" for use in certain cases involving oleomargarine: "In the case of oleomargarine or margarine an advertisement shall be deemed misleading in a material respect if in such advertisement representations are made or suggested by statement, word, grade designation, design, device, symbol, sound, or any combination thereof, that such oleomargarine or margarine is a dairy product. * * *." Since the word "suggested" modifies the word "representations," it is clear that any oleomargarine advertisement which

*represents or suggests* in any manner that it is a dairy product is "misleading in a material respect", and hence, because of the provisions of § 15(a) (1), is a "false advertisement" within the meaning of § 12. Section 15(a) (2) of the Federal Trade Commission Act clearly constitutes a finding by Congress that a representation that oleomargarine is a dairy product is misleading in a material respect and hence is a false advertisement. We therefore hold that the Commission, in a case coming within § 15(a) (2), is relieved of the requirement of finding that the advertising is in fact false and misleading. Reddi-Spred Corporation v. Federal Trade Commission, 3 Cir., 1956, 229 F.2d 557. We think the statutory language is so clear and unambiguous that we think it unnecessary to discuss the extended legislative history of § 15(a) (2). See Ex parte Collett, 1949, 337 U.S. 55, 61, 69 S.Ct. 944, 959, 93 L.Ed. 1207; United States v. Missouri Pacific R. Co., 1929, 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322, and cases there cited. Suffice it to say that the legislative history supports in copious detail the construction we have given the statute.[1]

■ Petitioner also contends that the Commission is not authorized to issue a cease-and-desist order for violation of § 15(a) (2), 15 U.S.C.A. § 55(a) (2), but can issue such orders only for violation of § 5, 15 U.S.C.A. § 45. Petitioner's argument rests on the thesis that the definition of false advertisement set forth in

subsections (a) (1) and (a) (2) of § 15 applies only to § 13 of the Act, 15 U.S.C.A. § 53, which provides for preliminary injunctions, and § 14, 15 U.S.C.A. § 54, which creates criminal penalties. Examination of the statutory language demonstrates that petitioner's contention is unsound: the definitions in § 15 are specifically stated to be "For the purposes of Sections 12, 13 and 14"; and § 12 in turn provides that any violation of that section is a violation of § 5.[2] We so stated in Fresh Grown Preserve Corp. v. Federal Trade Commission, 2 Cir., 1942, 125 F.2d 917, 919. The Commission's action in issuing a cease-and-desist order under § 5 as a sanction for violations of §§ 12 and 15 has been sustained in numerous cases. See, e. g., Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 1944, 143 F.2d 676.

## II

■ Petitioner asserts that § 15(a) (2), as we have construed it, is an unconstitutional abridgment of the freedom of speech guaranteed by the First Amendment. The Commission, relying on Valentine v. Chrestensen, 1942, 316 U.S. 52, 54, 62 S.Ct. 920, 86 L.Ed. 1262; Breard v. City of Alexandria, 1951, 341 U.S. 622, 641–642, 71 S.Ct. 920, 95 L.Ed. 1233; and Pollak v. Public Utilities Commission, 1951, 191 F.2d 450, 457, 89 U.S.App.D.C. 94, reversed on other grounds 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068, replies that all commercial advertising is without

1. Section 15(a) (2) was enacted in 1950 as part of a legislative compromise which resulted in the repeal of excise taxes which had been imposed on oleomargarine since 1886. Senator McCarthy, the sponsor of the amendment which is now § 15(a) (2), stated that the purpose of § 15(a) (2) was "to prevent any form of advertisement [of oleomargarine] which gives the impression, directly or by inference, that the consumer is buying butter." Cong.Rec., Jan. 6, 1950, pp. 128–129. The managers of the amendment in the House stated that its purpose was to make "any advertisement of oleomargarine or margarine misleading if such advertisement represents that oleo-

margarine or margarine is a dairy product * * *" H.R. No. 1731, 81st Cong., 2d Sess., p. 6, Cong.Rec., March 4, 1950, p. 2867. The legislative background is discussed in greater detail in the opinion of the Federal Trade Commission in this case, In re E. F. Drew & Co., Inc., F. T. C. Docket No. 6126.

2. See the exact language of § 12(b), 15 U.S.C.A. § 52(b). The interrelation of §§ 12, 13, 14 and 15 with § 5 is further illustrated by the provision in § 13(a), 15 U.S.C.A. § 53(a), authorizing the Commission to enjoin the dissemination of an advertisement which violates § 12 "pending the issuance of a complaint by the Commission under section 5 * * *."

the protection of the First Amendment. We think it sufficient to state that Congress can prohibit or control misleading advertising under the postal fraud statutes, Donaldson v. Read Magazine, 1948, 333 U.S. 178, 191, 68 S.Ct. 591, 92 L.Ed. 628, or under its commerce power, American Medicinal Products v. Federal Trade Commission, 9 Cir., 1943, 136 F.2d 426, 427, without deprivation of First Amendment rights. There is no constitutional right to disseminate false or misleading advertisements.

■ Petitioner, however, contends that there is no proof and no finding that its advertisements were *in fact* false or misleading. But this finding has been supplied by Congress in the statute itself, which states that any representation or suggestion that oleomargarine is a dairy product is deemed to be misleading. Nor is such a finding unreasonable. Congress might well think that confusion, deception and substitution of oleomargarine for butter or other dairy products was a problem that deserved legislative action. The method selected by Congress to effect this purpose is a matter of legislative discretion, not subject to attack if reasonably related to the end sought. Cf. Carolene Products Co. v. United States, 1944, 323 U.S. 18, 23, 27–32, 65 S.Ct. 1, 89 L.Ed. 15.

Nor is the slight and incidental limitation of speech necessary to avoid the danger of public deception an infringement of the First Amendment. Petitioner remains free to advertise its product. It is prohibited only from representing or suggesting that its product is a dairy product. "It is not difficult to choose statements, designs, and devices which will not deceive." United States v. Ninety-Five Barrels, More or Less, Alleged Apple Cider Vinegar, 1924, 265 U.S. 438, 443, 44 S.Ct. 529, 531, 68 L.Ed. 1094.

■ Petitioner also contends that § 15(a) (2) "is so ambiguous as to render it unenforceable," objecting particularly to the lack of a definition of "dairy product." The Third Circuit has recently rejected a similar contention. Reddi-Spred Corporation v. Federal Trade Commission, supra. We think the statute contains no ambiguity, but is expressed in plain and definite language. The term "dairy product," we think, must have been used in the sense of "made of milk or from some milk derivative." But whether or not that is so is not crucial here because everyone, and most assuredly petitioner, understands that the "dairy product" referred to insofar as this case is concerned is butter.

### III

■■ Petitioner's final contention is that there is no substantial evidence in the record to support the Commission's findings of fact.[3] Petitioner argues that margarine is "churned"; that Congress has used the word "churned" in defining oleomargarine in the Internal Revenue Code; that the word "creamy" as used in its advertisements connotes texture and not that the product contains cream; that the phrase "country fresh" is used metaphorically to describe the quality of its oleomargarine, etc. However, it is not our function to determine the truth of these claims or to determine the sense in which words are used, but only to determine whether the Commission's findings of fact are supported by substantial evidence. § 5(c), 15 U.S.C.A. § 45(c); Independent Directory Corp. v. Federal Trade Commission, 2 Cir., 1951, 188 F.2d 468, 470; Gelb v. Federal Trade Commission, 2 Cir., 1944, 144 F.2d 580, 582; Armand Co. v. Federal Trade Commission, 2 Cir., 1935, 78 F.2d 707, 707–708. Whether petitioner's advertisements represent or suggest that its oleomargarine is a dairy product is a question of fact for the Commission. Leach v. Carlile, 1922, 258 U.S. 138, 139–140, 42 S.Ct. 227, 66 L.Ed. 511.

---

3. Petitioner also contends that two surveys purporting to show public reaction to petitioner's advertisements were erroneously admitted in evidence. Neither the hearing examiner nor the Commission relied on the surveys in reaching their conclusion, and therefore their admission could not constitute prejudicial error.

We think that the Commission's finding that in petitioner's advertising "representations are made or suggested * * * that such oleomargarine * * * is a dairy product" is supported by substantial evidence. The expressions "churned" and "country fresh" have long been associated with butter, and their use in connection with petitioner's oleomargarine might suggest to some purchasers that its product had a composition and origin similar to butter, while the expression "the same day-to-day freshness which characterizes our other dairy products" clearly represents that petitioner's oleomargarine is a dairy product. The Commission is not required to sample public opinion to determine what meaning is conveyed to the public by particular advertisements. Zenith Radio Corporation v. Federal Trade Commission, 7 Cir., 1944, 143 F. 2d 29, 31; see also New American Library of World Literature v. Federal Trade Commission, 2 Cir., 1954, 213 F.2d 143, 145. The Commission, which is deemed to have expert experience in dealing with these matters, Federal Trade Commission v. R. F. Keppel & Bro., Inc., 1934, 291 U.S. 304, 314, 54 S.Ct. 423, 78 L.Ed. 814, is entitled to draw upon its experience in order to determine, in the absence of consumer testimony, the natural and probable result of the use of advertising expressions. Jacob Siegel Co. v. Federal Trade Commission, 1946, 327 U.S. 608, 614, 66 S.Ct. 758, 90 L.Ed. 888; Federal Trade Commission v. Hires Turner Glass Co., 3 Cir., 1935, 81 F.2d 362, 364. Since the Commission's findings of fact are not clearly unreasonable and are based on substantial evidence, they cannot be set aside.

In reviewing the initial decision of the hearing examiner, the Commission, *sua sponte,* determined that it had no authority to include in a cease-and-desist order under § 15(a) (2) a proviso permitting the unrestricted use of the name of a dairy product which is an ingredient of an oleomargarine even if accompanied by a statement of the percentage thereof. The Commission, therefore, has asked us to modify its order by striking from the proviso to paragraph 1 of its order the following language: "or a truthful statement that said product contains butter or any other dairy product provided the percentage thereof contained is clearly and conspicuously set forth." The Commission's requested modification is unopposed and should be granted. The proviso as modified will read:

"Provided, however, that nothing contained in this order shall prevent the use in advertisements of a truthful, accurate and full statement of all of the ingredients contained in such product."

The order of the Commission is affirmed as modified.